ALPER v. DUFFY, Adm'r.

No. 32279.   Oct. 15, 1946.

*173 P. 2d 444.*

N. C. Barry, of Miami, for plaintiff in error.

Lem H. Tittle, of Mangum, and Perry Porter, of Miami (Homer Windle, of Mangum, of counsel), for defendants in error.

OSBORN, J. This action was brought by J. T. Duffy, administrator of the estate of Harry H. Hawkins, deceased, plaintiff, against David Alper, defendant, to cancel certain contracts for the sale to Alper of mining property owned by Hawkins in Ottawa county. The case was tried to the court as one of equitable cognizance, judgment was for plaintiff, and defendant appeals.

The facts established by the evidence are practically undisputed. Hawkins was the owner of an undivided one-third interest in the land involved, the other two-thirds being the property of two restricted Quapaw Indians. He held a mining lease on the two-thirds so owned, which lease was duly approved

by the Secretary of the Interior. This lease was dated January 24, 1927, and was for a term of ten years from date, and as long thereafter as lead and zinc ore might be found in paying quantities, but not beyond March 2, 1948. The lease contained numerous provisions governing the operations of the lessee thereunder, and provided that upon the violation of any of its terms, covenants, conditions or stipulations, the Secretary of the Interior could, upon 30 days notice in writing, declare the lease forfeited, and cancel it, unless the default specified in the notice was corrected prior to the date of cancellation specified in the notice. Upon cancellation of the lease, the Secretary was entitled to immediate possession of the property.

The contract of sale between Hawkins and defendant required defendant, among other things, to operate the property so as to comply with the terms of the departmental mining lease above referred to, and to diligently carry on the work of prospecting for, developing, mining and cleaning the ores thereon without cessation. It further provided:

"It is further understood and agreed by and between the parties hereto, that if the said second party, his heirs or assigns, after sixty days notice by mail at their last known address, shall fail, refuse or neglect to carry out the work of prospecting, mining and milling of ores continuously for the benefit of the parties hereto and the said Indian land owners, then and in that event the said first party may declare the agreement null and void, and retain all sums of money he may have received from whatever source as liquidated damages and not as a penalty, it being agreed that the actual damages can not be determined.

"It is further understood and agreed by and between the parties hereto, that the conditions of the aforesaid next preceding paragraph shall not be invoked, if said parties are unable to carry on the work of mining and milling ores, as provided by this contract, by litigation or court orders due to any controversy between the said Harry H. Hawkins and his cotenants, or their representatives and agents."

By supplemental contract dated October 16, 1937, defendant elected to exercise the option to purchase the interests of Hawkins in the entire property, in accordance with and subject to the provisions of the original contract.

Both of these contracts were approved by the Secretary of the Interior on March 31, 1938. Defendant took possession of the property and conducted prospecting and mining operations thereon until December 28, 1940, at which time the departmental mining lease on the two-thirds interest of the restricted Indians was cancelled by the Secretary of the Interior, after notice to both Hawkins and defendant, because of the failure to operate the property in conformity with the terms of the lease. Defendant made no effort to prevent the cancellation of the lease, except that two days before the expiration of the 30 days given by the notice in which to show cause why the lease should not be cancelled, he wrote a letter to the Secretary of the Interior, attempting to explain and excuse the infractions of the lease specified in the notice, and denying any violation of the terms of the lease. He admitted that after December 28, 1940, he conducted no further mining or prospecting operations on the property, because he could not dispose of the ore after the lease was cancelled.

On February 18, 1941, defendant entered into a sub-contract with American Zinc Company of Oklahoma, by which that company was to take over the further operation of the property. That contract recited that:

"It is understood by the parties hereto that a controversy exists as to whether or not said mining lease has heretofore been forfeited and it is also understood by the parties hereto that this contract is subject to the approval of the Secretary of Department of Interior, and that this contract shall be of no force or effect unless and until said Department of Interior shall approve the same. The date of approval

of this contract by the Department of Interior shall be the effective date hereof".

This contract, and a supplemental contract dated April 24, 1941, were both approved by Hawkins, and in the endorsement of his approval on the original contract, which endorsement was dated April 24, 1941, he stated that the contracts between him and defendant were on that date in full force and effect. These contracts were filed in the Department of the Interior on May 14, 1941, and were never approved by the Secretary.

Hawkins died September 14, 1941, and plaintiff was duly appointed administrator of his estate. On October 7, 1942, plaintiff, by registered mail, notified defendant that at the expiration of 60 days from the receipt of such notice by defendant, plaintiff would, in accordance with the provisions of the original contract, cancel both it and the supplemental contract because of the suspension of mining operations by defendant, and because defendant had permitted the cancellation of the departmental lease. This notice was delivered to defendant's residence on October 10, 1942.

Defendant contends that the judgment is not sustained by the evidence. In view of the admitted fact that the departmental lease was canceled on the ground that he had not properly operated the property, and that after its cancellation he made no further effort to operate the property, we think this contention is devoid of merit. The contract between Hawkins and defendant expressly imposed upon defendant the obligation to diligently and continuously operate the property, and to comply with the requirements of the departmental lease. Defendant had sole and complete charge and control of the property and the operations thereon. If, as he asserts, there was no violation of the lease, and the grounds specified in the notice of cancellation were untrue, he should have promptly and vigorously contested the proposed cancellation. This he did not do, but, so far as the record shows, sat idly by and made no effort to avert the threatened action except the tardy letter above referred to. After the cancellation, he made no further effort to operate the property, and by his own testimony the only thing he did to procure the reinstatement of the lease was to submit for approval his contracts with American Zinc Company of Oklahoma. Such conduct on his part was clearly violative of his contract with Hawkins, and the evidence establishing these facts amply sustained the judgment of the trial court.

Defendant asserts that the cancellation of the lease was a controversy between Hawkins and his Indian cotenants, or their representatives or agents, and that therefore the last paragraph of the above-quoted portion of the contract applies. This contention is untenable, since no litigation or court orders prevented him from carrying on the work, and for the further reason that upon the approval of his contracts with Hawkins by the Secretary of the Interior he took the place of Hawkins as the operator of the property, and the controversy, if such it may be termed, was between defendant and the department over defendant's operation under the lease.

Defendant also complains that certain evidence relating to the cancellation of the departmental lease was improperly admitted. Since defendant admitted that the lease was canceled, the admission of such evidence, if erroneous, was harmless error.

Affirmed.

GIBSON, C. J., HURST, V. C. J., and RILEY, BAYLESS, WELCH, and DAVISON, JJ., concur.